[Civ. No. 6831. Third Dist. Mar. 26, 1943.]

THE PEOPLE, Appellant, v. JOHN GABRIEL et al., Respondents.

Earl Warren, Attorney General, H. H. Linney, Assistant Attorney General, and Adrian A. Kragen, Deputy Attorney General, for Appellant.

Harold L. Hjelm for Respondents.

THOMPSON, J.—The State of California has appealed from a judgment which was rendered against it in a suit to recover from alleged purchasers of a soft drink business at Turlock, called the "Giant Orange," increased retail sales taxes levied by the State Board of Equalization, under section 17 of the Retail Sales Tax Act of California (Stats. 1933, p.

2599, as amended Stats. 1935, p. 1256, Deering's Supp. of 1935, p. 1956, Act 8493), after the transfer of the fixtures and equipment had been consummated. The plaintiff's theory of liability on the part of the defendants is based on their failure to withhold sufficient funds from the purchase price of the property to cover the subsequent levy, as required by the third paragraph of section 26 of the act.

For several years prior to 1937, Andrew J. Hansen operated a seasonal soft drink business in a structure called the "Giant Orange" located on leased land adjacent to the highway at Turlock, Stanislaus County. He owned the structure and equipment consisting of a cash register, beer cabinet, refrigerator, juice extractor and other necessary devices. In the fall of 1937 he became involved in domestic trouble which resulted in his divorce. At the end of the business season of that year he "closed his place of business and left Turlock." The following March he returned to Turlock and on March 19, 1938, he sold and conveyed to the defendants Mary Gabriel and her son "all of the fixtures, equipment and building" called the "Giant Orange" for the sum of $2,250. He informed the defendants that his lease on the real property had expired and that he then had no lease. It was stipulated that the defendants paid to Mr. Hansen $2,250 in cash for "the Giant Orange building, a beer cabinet, a cash register, and an icebox, and an extractor, juice extractor."

The defendants took possession of the property and arranged to rent the real estate upon which the Giant Orange was located from the owner Jesse Santos for $25 per month. They began to sell beverages on April 10, 1938, making their first quarterly report to the Board of Equalization under Mr. Hansen's permit. The complaint alleges, and the plaintiff concedes, that Mr. Hansen regularly rendered his reports of sales quarterly and fully paid all taxes in accordance therewith to the time of his sale of the fixtures and equipment to the defendants. No objection was made to any irregularity in those reports or payments until after the sale of the fixtures and equipment to the defendants. Prior thereto no unpaid sales taxes appeared on the records of the Board of Equalization. The defendants had no notice or knowledge of any claim of delinquent taxes prior to their purchase of the property. An examination of the records of the board would have disclosed no such delinquent taxes. The additional taxes sought to be recovered in this action were not levied until after the sale of the fixtures and equipment was

consummated. This subsequent levy included taxes for alleged sales which occurred from and after March 1, 1935, three years before the purchase of the equipment occurred. The defendants had no way of acquiring knowledge of such claims. It is true that the defendants failed to withhold any portion of the purchase price of the property.

November 18, 1938, the defendants, as co-partners, applied to the Board of Equalization and were granted permission to sell soft drinks at said "Giant Orange" in Turlock. They have fully paid all taxes levied against them for sales of beverages. February 23, 1939, the State filed the complaint against the defendants in this action to recover additional sales taxes incurred by Andrew J. Hansen in the aggregate sum of $509.47.

A special and general demurrer to the complaint was overruled. The defendants answered denying the material allegations of the complaint. The cause was tried upon an oral stipulation of facts, together with the introduction of three documents, including defendants' application for permission to sell beverages and two certificates of tax levies by the Board of Equalization. The stipulation of facts is meager and unsatisfactory. It does, however, definitely appear therefrom that in 1937 Andrew J. Hansen who had formerly owned and operated the Giant Orange business was involved in a divorce suit and that he then "closed his place of business and left Turlock"; that thereafter in March, 1938, he returned to Turlock and sold and conveyed to the defendants "the Giant Orange building, a beer cabinet, a cash register, and an icebox, and an extractor, juice extractor, for the sum of $2,250"; that Mr. Hansen then told the defendants he did not have a lease on the real property upon which the structure was located. In the stipulation of facts no mention was made regarding a sale of the soft drink business as distinguished from the fixtures and equipment. The clear import of that stipulation is that Hansen had abandoned his business on account of domestic trouble and that he did not pretend to sell the business to the defendants. The stipulation specifically enumerates the items of personal property which were sold to the defendants for the aggregate sum of $2,250. This precludes the inference that the sale included either the soft drink business or the good-will thereof. It is true that defendants' application for permission to sell beverages, which was received in evidence, contains some answers to

printed interrogations which may appear to be inconsistent with the stipulation of facts. That fact merely raises a conflict of evidence. The question of reconciling these statements with the stipulation of facts is a matter solely within the province of the trial judge. The court found that the defendants on March 19, 1938, purchased from Andrew J. Hansen "a Giant Orange building and structure, a beer cabinet, a cash register and ice box, and extractor and a juice extractor" for the sum of $2,250; that the defendants did not purchase the business or good-will of the vendor; that they were not "the successors in interest or purchasers or assignees of any business or stock in trade" and that defendants were not indebted to the plaintiff for the subsequent levy of sales taxes against the former owner Andrew J. Hansen. Judgment was accordingly rendered to the effect that plaintiffs take nothing by this action. From that judgment the State of California has appealed.

Since the answers of Mrs. Gabriel to the interrogatories propounded to her in her application for permission to sell beverages at the Giant Orange merely create a conflict of evidence, this court is bound by the determination of the trial court in that regard.

A stipulation of counsel, at the trial of a case, that specified material facts are true and may be considered as evidence is ordinarily binding on the respective parties and upon the court. (*Haese* v. *Heitzeg*, 159 Cal. 569 [114 P. 816]; 23 Cal.Jur. 826, sec. 12; 2 Jones Comm. on Evidence, 2d ed., 1759, sec. 9551; 60 C.J. 78, secs. 68-71.) When the facts of a case are clearly stipulated, evidence which tends to refute such facts is inadmissible. (60 C.J. 82, sec. 71.) In the authority last cited it is said in that regard:

"Evidence to disprove or which has a tendency to disprove the facts admitted, or to limit the effect of the stipulation agreement, is not admissible."

Nor is the trial court authorized to adopt findings which are in conflict with the stipulated facts. (*Wilson* v. *Mattei*, 84 Cal.App. 567, 573 [258 P. 453].)

The only question is whether the defendants are liable under section 26 of the Retail Sales Tax Act for taxes levied subsequent to their purchase of the fixtures and equipment on account of failing to withhold a sufficient portion of the purchase price thereof with which to pay the subsequent levy against the former owner of the property. The third paragraph of section 26 reads:

"If any retailer liable for any tax, interest or penalty levied hereunder shall sell out his business or stock of goods or shall quit the business, he shall make a final return and payment within fifteen days after the date of selling or quitting business. His successor, successors or assigns, if any, shall withhold sufficient of the purchase money to cover the amount of such taxes, interest or penalties due and unpaid until such time as the former owner shall produce a receipt from the board showing that they have been paid, or a certificate stating that no taxes, interest or penalties are due. If the purchaser of a business or stock of goods shall fail to withhold purchase money as above provided, he shall be personally liable for the payment of the taxes, interest and penalties accrued and unpaid on account of the operation of the business by any former owner, owners or assignors."

It is our opinion that the evidence amply supports the court's findings and judgment that the defendants did not purchase Andrew J. Hansen's business or become his successors *in said business,* but upon the contrary that they merely purchased the fixtures and equipment. Mr. Hansen was not conducting a business at the time of the sale. It follows that the defendants are not liable for a subsequent levy of sales taxes of which they had no notice or knowledge until after the purchase of the property.

The levy of taxes which is involved in this suit was made by the Board of Equalization pursuant to section 17 of the Retail Sales Tax Act, which provides in part:

"If the board is not satisfied with the return and payment of tax made by any retailer, it is hereby authorized and empowered to make an additional assessment of tax due from such retailer based upon the facts contained in the return or upon any information within its possession or that shall come into its possession. . . .

"If any part of the deficiency for which the additional assessment is imposed is due to negligence or intentional disregard of the act or authorized rules and regulations, a penalty of ten per cent of the amount of the additional assessment shall be added, plus interest as above provided. If any part of the deficiency for which the additional assessment is imposed is due to fraud or an intent to evade the tax, a penalty of twenty-five per cent of the amount of the additional assessment shall be added, plus interest as above provided.

"The board shall give to the retailer written notice of such

additional assessment. Such notice may be served upon the retailer personally or by mail; if by mail, service shall be made in the manner prescribed by section 1013 of the Code of Civil Procedure and addressed to the retailer at his address as the same appears in the records of the board.''

In the present case there is no competent evidence of the records of the Board of Equalization showing that the additional taxes which are involved in this suit were imposed against Andrew J. Hansen. There is no evidence of the date when that levy was made, if at all. There is no evidence that the retailer was ever served with notice of the levy as required by section 17, *supra*. All that appears in evidence to indicate the existence of such a levy is a certificate of an officer of the Board of Equalization dated November 30, 1938, averring that a levy for a specified sum was made against Andrew J. Hansen. This certificate is a mere conclusion of the officer that a levy of taxes was made at some undisclosed time. This certificate does not purport to cover a copy of the judgment or records of the Board of Equalization levying such tax or creating a lien therefor. These certificates are therefore not competent evidence to prove the actual levying or existence of the taxes in question or the obligation alleged to have occurred thereby. Section 1923 of the Code of Civil Procedure provides:

''Whenever a copy of a writing is certified for the purpose of evidence, *the certificate must state in substance that the copy is a correct copy of the original,* or of a specified part thereof, as the case may be. The certificate must be under the official seal of the certifying officer, if there be any, or if he be the clerk of a court having a seal, under the seal of such court.'' (Italics added.)

For the foregoing reasons the judgment is affirmed.

Peek, J., and Adams, P. J., concurred.